## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Markia Peguese, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Otis Worldwide Corporation,<br><br>Defendant. | Civil Action No.:<br><br><br><br>**COMPLAINT – COLLECTIVE ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Markia Peguese, by and through her attorneys, on behalf of herself and others similarly situated, based on personal knowledge with respect to her own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, alleges the following:

## I.    INTRODUCTION

1.    "Despite the health benefits of breastfeeding for both mothers and infants, too many nursing employees face obstacles to pumping breast milk in the workplace, making it difficult to continue breastfeeding while employed. Break time and a private space to express breast milk are critical [] supports for breastfeeding employees."[1]  The House of Representatives reached these conclusions in 2021 after more than a decade of considering the plight of working mothers around the country. Since 2010, the Fair Labor Standards Act of 1938 ("FLSA") has required employers

---

[1] H.R. Rep. 117-102, at 3 (2021), *available at* https://www.congress.gov/117/crpt/hrpt102/ CRPT-117hrpt102.pdf.

to provide nursing accommodations, but "[g]aps in the law limit access to [its] protections and le[ft] employees unable to recover in court when their employers fail to comply with the law's requirements."[2]  Therefore, on December 29, 2022, Congress passed and the President signed the Providing Urgent Maternal Protections for Nursing Mothers Act (the "PUMP Act") to extend the FLSA protections "to more employees and ensure employees can recover appropriate forms of relief in court when employers violate the law."[3]

2.      Despite already being required to comply with the FLSA breastfeeding requirements for more than a decade, after the PUMP Act came into effect, Otis Worldwide Corporation ("Otis" or the "Company") failed and continues to fail to provide proper accommodations to its nursing employees for minimum appropriate break times and space to express breast milk in private. Employees are forced to pump breast milk in unsanitary bathrooms or their private vehicles because Otis fails to provide its employees with a "reasonable break time for an employee to express breast milk" and fails to provide a "place…that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," all of which is mandated by the PUMP Act. Otis's failure to provide sufficient lactation accommodations is a systemic issue that has impacted employees at properties throughout the country.

3.      Given this nationwide issue, Plaintiff brings this collective action lawsuit against Otis for violating the FLSA as amended by the PUMP Act, 29 U.S.C. § 218d(a)(1) and (2).

4.      It has long been known that breastfeeding is crucial for a newborn baby and has numerous benefits for the mother and the child. The American Academy of Pediatrics recommends

---

[2] *Id.*

[3] *Id.*

breastfeeding exclusively for at least the first six months after birth and, ideally, until or after the child is twelve months of age.[4] Breast milk is an organic superfood that provides the essential nutrients and antibodies required for a baby's healthy growth and development. It can reduce the risk of various illnesses and infections and strengthen the infant's emotional and psychological development. Breastfeeding also has mental and physical benefits for the mother and for society at large.

5.      Not providing supportive accommodations for nursing mothers can have a negative impact on their physical, mental, and emotional health. Mothers unable to pump breast milk can experience engorgement, which can be painful and lead to infection. They also produce less milk for their babies. Not having sufficient time or space to pump can also result in increased feelings of stress, anxiety, and guilt for not being able to provide their babies with the best possible nutrition. Studies show that mothers who did not have access to a private place to pump breast milk were less likely to continue breastfeeding and achieve their breastfeeding goals, which increases their risk of mental health conditions like anxiety, postpartum depression, and stress.

6.      Despite the overwhelming consensus about the benefits of breastfeeding, discrimination against breastfeeding workers remains a widespread issue. A 2016 report by the University of California found that "three out of every five mothers work for employers who do not provide reasonable break time and private space for pumping breast milk."[5]

---

[4] Along with the World Health Organization, the U.S. Surgeon General's Office, and the American Academy of Family Physicians. *See* the Office of Personnel Management, *Guide for Establishing a Federal Nursing Mother's Program* (January 2013), at 2. Available at: https://www.opm.gov/policy-data-oversight/worklife/news/2013/1/opm-publishes-new-guide-for-establishing-a-federal-nursing-mother-s-program/ (last accessed October 12, 2023).

[5] Morris, L., Lee J., Williams, J. C., *Exposed: Discrimination Against Breastfeeding Workers*, Center for WorkLife Law, University of California, Hasting College of the Law, Research Paper No. 328 (January 1, 2019), available at: https://worklifelaw.org/publication/breastfeeding-report/ (last accessed October 12, 2023), citing Katy B. Kozhimannil et al., *Access to Workplace*

7.     To ensure that employers provide reasonable break times and a private, non-bathroom space for breastfeeding employees to pump at work, Congress passed the Break Time for Nursing Mothers law (the "Pumping at Work Act") in 2010, which amended the FLSA to require such accommodations for individuals who needed to express breast milk while on the job. Unfortunately, the Pumping at Work Act, § 207(r) of the FLSA covered only non-exempt employees and had such a weak enforcement mechanism that it rendered the law "virtually useless in almost all practical application."[6] The 2022 PUMP Act corrected this defect by providing additional forms of relief for those harmed by their employer's failure to provide adequate time and space for nursing parents to pump. *See* 29 U.S.C. §§ 216(b) and 218d.

8.     Plaintiff Markia Peguese was an employee of Otis at 1500 Otis Way in Florence, South Carolina. She gave birth to her child in November 2022 and commenced her employment in February 2023.  Before starting at Otis, Ms. Peguese discussed pumping accommodations with the hiring staff, who assured her that there would be lactation accommodations. However, when she arrived on her first shift, Otis did not accommodate her to pump breast milk at work. Despite having empty offices, Otis refused to allow Ms. Peguese to use them, and she was forced to go to the bathroom and squeeze the milk out of her breasts in a bathroom stall. In this way, Otis deprived her of her rights as a nursing mother guaranteed by the PUMP Act to reasonable breaks and a clean and secure space to pump milk for her infant child. Otis failed to provide her with a secure, private space to pump and with reasonable breaks to pump.

---

*Accommodations to Support Breastfeeding after Passage of the Affordable Care Act*, 26 Women's Health Issues, 6 (2016).

[6] *Hicks v. City of Tuscaloosa*, No. 13-cv-02063, 2015 U.S. Dist. LEXIS 141649, at *99 (N.D. Ala. Oct. 19, 2015).

9.      As a result of her experience, Ms. Peguese repeatedly experienced severe engorgement and a reduction in her milk supply. The reduction in milk supply for her new baby, along with the lack of accommodations provided by Otis, has caused Ms. Peguese to endure pain, anguish, anxiety, hardship, humiliation, and emotional distress.

10.     It would be relatively easy for Otis to comply with the PUMP Act.  For example, there are pre-fabricated temporary spaces that are commercially available for installation. These temporary spaces are easy to set up, affordable, and would satisfy Otis's obligations under the PUMP Act. Examples of the spaces are those sold by Mamava,[7] Brighter Booth[8], and DayOne Baby[9], among many others. Images from those companies' web sites show how such spaces could have been integrated into Otis's space:



11.     Likewise, other companies are working to accommodate breastfeeding mothers with different easy to implement options, such as dedicating a room to breastfeeding in a public

---

[7] https://www.mamava.com/all-products (last accessed October 12, 2023).

[8] https://brighterbooth.com (last accessed October 12, 2023).

[9] https://www.dayonebaby.com (last accessed October 12, 2023).

stadium[10] or permitting employees to use managers' locked offices to express milk.[11] Thus, while there are many ways to accommodate breastfeeding employees, Otis has simply decided to not provide such accommodations.

12.    Otis's failure to comply with the PUMP Act has significantly impacted Ms. Peguese and other breastfeeding Otis employees. Instead of supporting breastfeeding mothers, Otis's practices forced those mothers into a Hobson's choice between using demeaning, unsanitary spaces to express milk, abandoning pumping at work altogether, or quitting their jobs. Congress clearly declared in the PUMP Act that no mother should have to make such a choice.

13.    Plaintiff seeks redress for Otis's violations of the PUMP Act. Plaintiff asserts two causes of action against Otis's nationwide practice of failing to provide sufficient break time and a functional place, shielded from view and free from intrusion, which an employee may use to express breast milk. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, reasonable attorneys' fees, litigation costs, and pre-and post-judgment interest.

14.    Plaintiff brings this claim on behalf of herself and similarly situated former and current non-executive employees of Otis who were expressing breastmilk at any time from December 29, 2022, to the resolution of this action and who, upon request, were denied reasonable break times to express milk or denied a private, functional space to express breast milk and who elect to opt-in to this action (the "FLSA Collective").

15.    The members of the FLSA Collective are victims of Otis's practice of refusing to provide sufficient break times or "a place, other than a bathroom, that is shielded from view and

---

[10]  *See* https://wvutoday.wvu.edu/stories/2023/09/07/new-dedicated-lactation-room-opens-to-the-public-at-milan-puskar-stadium (last accessed October 12, 2023).

[11]  *See*  https://www.qsrmagazine.com/outside-insights/ask-restaurant-legal-professionals-how-accommodate-pregnant-and-breastfeeding (last accessed October 12, 2023).

free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," as required by 29 U.S.C. § 218d.

16.     Otis has intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA Collective by refusing to provide accommodations that they know they are obligated to provide under the PUMP Act.

17.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated employees are known to Otis, are identifiable, and can be located through Otis's records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to § 216(b) of the FLSA.

## II.     **PARTIES**

18.     Plaintiff Markia Peguese was an employee of Otis who worked as an Assembler at 1500 Otis Way in Florence, South Carolina. Ms. Peguese is an individual resident of Florence, South Carolina, and a citizen of South Carolina. During all relevant times, Ms. Peguese was the mother of an infant whom she breastfed and continued to breastfeed while she was working for Otis. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto as Exhibit A.

19.     The members of the FLSA Collective, including Ms. Peguese, are or have been employed by Otis in the last nine months and have requested lactation accommodation. Upon information and belief, Otis's practices and policies, or lack thereof, have impacted members of the FLSA Collective in the same or a similar manner across Otis's locations.

20.     Otis is the world's leading elevator and escalator manufacturing, installation and service company. Otis has roughly 300 facilities in the U.S. as of December 31, 2022. Otis offers

new equipment and services related to passenger and freight elevators and escalators. Forty percent of the Board of Otis are females, including the CEO.[12]

21.     Upon information and belief, Otis has a centralized policy-making system whereby policies, practices, and guidelines, including with respect to lactation accommodations, are created and disseminated to the various locations from the headquarters in Farmington, Connecticut.

22.     Defendant Otis is an "employer" within the meaning of the FLSA pursuant to 29 U.S.C. §§ 203(a), (d) and was an "employer" of Ms. Peguese at all times relevant hereto.

### III.     JURISDICTION AND VENUE

23.     This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

24.     This Court has personal jurisdiction over Otis because it is located in this District, transacts business in this District, employs people in this District, and has significant contacts with this District.

25.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant Otis is headquartered in this District. Further, a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and it is subject to personal jurisdiction here.

---

[12] *See* Otis ESG Report, at 39. Available at: https://www.otisinvestors.com/2022esgreport (last accessed October 6, 2023).

## IV.    BACKGROUND

### A.    *The Benefits of Breastfeeding*

26.    There are significant and proven benefits to breastfeeding children. Breast milk is widely accepted as the optimal source of nutrition for infants, and it provides numerous protections against illnesses and diseases for infants and mothers alike.[13]

27.    Breastfed babies generally have better immune system development and functioning because breastmilk contains antibodies that protect developing immune systems from disease.[14] As a result, babies who are breastfed tend to have fewer and less severe instances of certain short-term illnesses, including bacterial meningitis, diarrhea, ear infections, respiratory infections, urinary tract infections, and certain chronic illnesses, including diabetes, lymphoma, leukemia, hypercholesterolemia, and asthma.[15]

28.    A paper published in 2015, analyzing dozens of studies, found that breastfeeding is associated with a lower risk of childhood obesity. The paper states that breastfeeding was associated with a significantly reduced risk of obesity in children.[16]

---

[13] Am. Acad. of Pediatrics. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics. 2022;150 (1): e2022057988. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1 (last accessed October 12, 2023).

[14] *See* Spitzmueller, C.*,* Wange, Z., Zhang, J., Thomas, C.L., Fisher, G.G., Matthews, R.A., and Strathearn, L. (2016). *Got milk? Workplace factors related to breastfeeding among working mothers*, Journal of Organizational Behavior, J. Organiz. Behav. 37, 692–718; Grummer-Strawn, L.M. and Rollins, N. (2015), Summarising the health effects of breastfeeding. Acta Paediatr, 104: 1-2. https://doi.org/10.1111/apa.13136 (last accessed October 12, 2023).

[15] *See Guide for Establishing a Federal Nursing Mother's Program, supra,* n. 4, at 6–7.

[16] Horta, B.L., Loret de Mola, C. and Victora, C.G., *Long-term consequences of breastfeeding on cholesterol, obesity, systolic blood pressure and type 2 diabetes: a systematic review and meta-analysis*. Acta Paediatr, (2015) 104: 30-37; *see also* Yan J., Liu L., Zhu Y., Huang G., Wang P.P., *The association between breastfeeding and childhood obesity: a meta-analysis.* BMC Public Health. 2014, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4301835/ (last accessed October 12, 2023).

29.     Several studies have found that breastfeeding is associated with a lower risk of sudden infant death syndrome ("SIDS"). These studies show that babies who were breastfed for the first few months of life had a lower risk of SIDS than babies who were not.[17]

30.     The World Health Organization recommends that infants be exclusively breastfed for the first six months of life, meaning they should receive no other food or drink, not even water.[18]

31.     Although breastfeeding initiation and duration have consistently improved, one study revealed that 60% of women do not meet their breastfeeding goals.[19]

32.     Society also benefits from breastfeeding. One study showed that if 90% of women in the United States breastfed exclusively for six months, it would save the country $13 billion and prevent 911 preventable infant deaths per year.[20]

33.     As discussed, the benefits of breastfeeding are significant, but there are also drawbacks to not breastfeeding. Parents who do not breastfeed suffer heightened health risks

---

[17] Meek, J. Y., Noble, L. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics July 2022; 150 (1): e2022057989, at 7. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1?autologincheck=redirected (last accessed October 12, 2023).

[18] *World Health Organization's (WHO) Global Strategy for Infant and Young Child Feeding*, at 7–8. Available at: https://www.who.int/publications/i/item/9241562218 (last accessed September 22, 2023).

[19] Odom E. C., Li R., Scanlon K. S., Perrine C. G., Grummer-Strawn L., *Reasons for earlier than desired cessation of breastfeeding*. Pediatrics (2013); 131: e726–e732, e729.

[20] Morris, L., Lee, J., Williams, J., *Exposed: Discrimination Against Breastfeeding Workers*. WorkLife Law, at 7. Available at: https://worklifelaw.org/publication/exposed-discrimination-against-breastfeeding-workers/ (last accessed on May 11, 2023) (citing Bartick, M. L., & Reinhold, J. *The economic burden of suboptimal breastfeeding in the United States: a systematic review*. Pediatrics (2010); 126(3), e756–e768).

"including breast and ovarian cancers, heart disease, postpartum depression, diabetes, and rheumatoid arthritis."[21]

## B.     *Proper Workplace Accommodations for Pumping Are Critical*

34.     Not having a secure space for nursing mothers can increase anxiety and feelings of being overwhelmed, which can have a negative impact on the mother's mental, physical, and emotional health. Nursing mothers who do not have adequate workplace support are at an increased risk of early weaning, illness, and job loss. Therefore, it is critical for workplaces to provide support for nursing mothers.

35.     In 2011, the U.S. Surgeon General released a Call to Action to Support Breastfeeding and noted that for employed mothers, "returning to work is a significant barrier to breastfeeding" because nursing mothers often face inflexibility and, among other things, lack a private place to express milk.[22] The Call to Action found that when mothers "do not have a place to breastfeed or express breast milk, they may resort to using the restroom for these purposes, an approach that is unhygienic and associated with premature weaning."[23]

36.     A study based on data from 2011 to 2013, after the Pumping at Work Act was enacted in 2010, found that workplace accommodations are a significant predictor of breastfeeding duration.[24] The study found that nearly 50% of women reported that their postpartum employment

---

[21] *Id.*, at 7, citing Am. Acad. of Pediatrics, Policy Statement, *Breastfeeding and the Use of Human Milk*, 129 PEDIATRICS e827, 32 (2012).

[22] *The Surgeon General's Call to Action to Support Breastfeeding, Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52682/ (last accessed September 22, 2023).

[23] *Id.*

[24] Kozhimannil, K. B., Jou, J., Gjerdingen, D. K., and McGovern, P. M., *Access to workplace accommodations to support breastfeeding after passage of the Affordable Care Act*, Women's Health Issues. 2016; 26(1): 6–13.

plans affected breastfeeding-related decisions.[25] About a third of women indicated that employment posed a challenge to breastfeeding, and only 45% of women had access to a private space to pump milk.[26]

37.    A clean and secure lactation space is necessary for a mother to pump milk comfortably and efficiently.[27] Without a clean, secure space, nursing mothers can experience anxiety and stress, which can negatively impact the mother's milk supply.

38.     The more a mother gets to pump her breast milk, the longer her milk supply/production lasts and the more breast milk the baby gets. Continuous pumping increases the chances of a longer supply of breastmilk.[28] Conversely, being unable to express milk when needed can result in a decrease in the individual's milk supply, forcing an earlier-than-recommended weaning of the child.[29]

39.    When a mother's milk empties, there are neurological signals that release a hormone called prolactin, which triggers milk production. Limiting the amount a mother can pump decreases the amount of emptying and therefore decreases milk production.

---

[25] *Id.*, at 8.

[26] *Id.*

[27] *See* Whitley M.D., Ro A., Choi B. *Workplace breastfeeding support and job satisfaction among working mothers in the United States*. Am J Ind Med. 2019; 62(8):716–726, 717. Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/ (last accessed October 12, 2023).

[28] *See* Bai Y., Wunderlich S.M. *Lactation accommodation in the workplace and duration of exclusive breastfeeding*. J Midwifery Womens Health. 2013; 58(6): 690–96, 697 and 695.

[29] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 22.

40.     Limiting the amount a person can pump can also lead to mastitis, an inflammation of the breast tissue that may involve infection, abscess, pain, fever, and illness.[30] Mastitis can increase the risk of premature weaning.[31] Even if women do not develop mastitis or other complications from engorgement, pumping while already engorged can cause nipple trauma and bruising. Additionally, inadequate pumping can reduce a mother's milk supply, and it can take much longer to bring the supply back up.[32]

41.     Moreover, a recent systematic review of studies on maternal mental health and breastfeeding showed that mothers who were not able to achieve their breastfeeding goals had negative mental health outcomes and put them at greater risk for depression, anxiety, and other mental health conditions.[33] Having proper workplace accommodations, like a clean and secure place to pump milk, can help nursing mothers achieve their breastfeeding goals and minimize the risk of maternal mental health problems, such as depression and anxiety. Nursing mothers who had access to supportive workplace accommodations can feel more confident and supported in the breastfeeding experience, which can play an important role in maternal mental health.[34]

---

[30] *Exposed: Discrimination Against Breastfeeding Workers*, s*upra* note 2 at 7, citing Lisa Amir. & The Academy of Breastfeeding Medicine Protocol Committee, ABM Clinical Protocol #4: Mastitis, Breastfeeding Medicine, 9 (5), 239 (Revised March 2014).

[31] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 22.

[32] *Id.*

[33] Yuen M., Hall O.J., Masters G.A., Nephew B.C., Carr C., Leung K., Griffen A., McIntyre L., Byatt N., Moore Simas T.A. *The Effects of Breastfeeding on Maternal Mental Health: A Systematic Review*. J Womens Health (Larchmt). 31(6): 787–807, available at: https://pubmed.ncbi.nlm.nih.gov/35442804/ (last accessed October 12, 2023).

[34] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 22.

### C.     Employers Must Do More to Protect Breastfeeding Employees

42.     Failing to provide adequate lactation accommodations remains a prevalent issue and can often force nursing mothers to stop breastfeeding or leave the workplace altogether.

43.     A report published in 2016 by the Center for WorkLife Law at the UC Hastings College of the Law found that cases where an employer denied accommodations to or discriminated against an employee because she was breastfeeding or needed to express milk during the workday increased 800% between 2005 and 2016.[35]

44.     According to a report released in 2019, which tracked 70 cases involving allegations of breastfeeding discrimination and retaliation that have written opinions issued between 2008 and April 2018, 63% of employees ended up losing their job (43% were fired and 20% resigned).[36]

45.     The women facing job loss for lack of lactation accommodation spanned from a taqueria cashier in California to a doctor in Georgia and a lawyer in New York.[37]

46.     For example, in 2019, Simone Teagle filed a lawsuit against the City of New York for the discrimination she experienced as a breastfeeding mother.[38] Teagle said that for nearly six

---

[35] Calvert, C. T., *Caregivers in the Workplace: FRD Update 2016*. Center for WorkLife Law at the UC Hastings College of the Law, at 17. Available at: https://worklifelaw.org/publications/Caregivers-in-the-Workplace-FRD-update-2016.pdf (last accessed October 12, 2023).

[36] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 20, at 13.

[37] *Id.* citing *Dep't of Fair Employment & Hous. v. Acosta Tacos*, No. E200708 T-0097-00se, 2009 CAFEHC LEXIS 2, at *8–10 (Cal. Fair Employment & Hous. Comm'n June 16, 2009); *Wexler v. Kennesaw Pediatrics, P.C.*, No. 16-cv-1491, 2017 U.S. Dist. LEXIS 111037, at *2–3 (N.D. Ga. July 17, 2017); *Kim v. Goldberg*, 862 F. Supp. 2d 311, 315 (S.D.N.Y. 2012).

[38] *See Teagle et al. v. The City of New York et* al., No. 19-cv-7211 (E.D.N.Y); *see also* H.R. 3110, 117th Cong. (1st Sess. 2021), at 16.

months, she was forced to pump in a breakroom, a bathroom, the locker room, or her vehicle.[39] As a result, she "lost a lot of her milk supply."[40] The suit is still pending.

### D.      The Law Before the PUMP Act

47.      Despite this wide consensus in favor of pumping, and Congress having passed the Pumping at Work Act in 2010, for the past 12 years, a common problem faced by all nursing mothers who were not provided with sufficient lactation accommodation was the weak enforcement mechanism under the Pumping at Work Act. With limited remedies available, many of the claims in these cases based on violations of the Pumping at Work Act were dismissed.

48.      Under § 207(r) of the Pumping at Work Act, the only remedies available were for unpaid minimum wages or overtime compensation. However, because employers are not required to pay employees who take breaks to pump, holding accountable employers who failed to provide accommodations was virtually impossible. As one court noted, regarding the Pumping at Work Act, "there does not appear to be a manner of enforcing the express breast milk provisions."[41]

49.      In one of a handful of cases in which the court permitted a § 207(r) claim to proceed, a postpartum bank teller was told she had to express milk in the bathroom. When she objected that the bathroom was unsanitary, she was eventually forced to leave work in the middle of the day to go home and pump.[42] She sued her employer, and the court only permitted the suit to proceed because it found the plaintiff had alleged 40.35 hours of lost wages. The case was settled in 2017.

---

[39] *See NYPD Cop Sues City for $5 Million Amid Claims She Was Harassed for Pumping Breast Milk*, (October 18, 2018). Available at: https://news.yahoo.com/nypd-cop-sues-city-5-155315818.html (last accessed April 12, 2023).

[40] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 20, at 12.

[41] *Salz v. Casey's Marketing Co.*, No. 11-cv-3055, 2012 U.S. Dist. LEXIS 100399, at *7 (N.D. Iowa July 19, 2012).

[42] *See Lico v. TD Bank,* No. 14-cv-4729, 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y., 2015).

50.     In another case, the court only permitted a furniture salesperson's § 207(r) claim to proceed because she alleged that she had to leave the sales floor and pump in her car, which resulted in her losing sales commissions to other salespeople.[43]

51.     The Department of Labor similarly acknowledged the weak enforcement mechanism when it issued a notice stating that "[b]ecause employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks."[44]

52.     Without a proper enforcement mechanism, employers like Otis were permitted to, and did, freely violate the Pumping at Work Act with little fear of consequence.

53.     Ensuring that working mothers have the time and space to express breastmilk is not a partisan issue. Around the time that the PUMP Act was passed, politicians from across the political spectrum expressed support for strengthening protections for lactating mothers in the workplace.

54.     In a statement issued on March 8, 2021, in recognition of International Women's Day, President Biden said: "We must ensure that women can access affordable, high-quality health care throughout their lives, including maternal health care and the ability to breastfeed."[45]

55.     Thereafter, in October 2021, Congresswomen Jaime Herrera Beutler, a Republican Congresswoman from Washington, expressed her support for the PUMP Act stating:

> Making sure moms can pump at work promotes healthier families,
> and it's also important to help businesses recruit and retain the

---

[43] *See Poague v. Huntsville Wholesale Furniture*, 369 F. Sup. 3d 1180, 1199 (N.D. Ala. 2019).

[44] *Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073, 80078.

[45] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/08/statement-by-president-biden-on-international-womens-day/ (last accessed October 12, 2023).

workforces they need. That's why I'm pleased the House approved this business-friendly, bipartisan legislation … that simply provides moms with reasonable opportunities to pump in their workplace. I'm proud to have worked with businesses, health care stakeholders, and parents in successfully leading this legislation that supports moms in Southwest Washington who are providing for their family's health and financial security.[46]

56.     On September 27, 2021, the White House issued a statement strongly supporting the PUMP Act, stating that: No new mother should face unfair treatment in the workplace because their employer refuses to provide them with [a] . . . private, clean space needed to adequately express breast milk while at work, forcing them to choose between their health and the health of her child, and earning a paycheck. Yet millions of new working mothers, disproportionately working mothers of color, face this challenge every day.[47]

57.     Prior to the vote on the PUMP Act, Republican Senator Lisa Murkowski stated: "With this bill, parents will be empowered to make their own choices on breastfeeding, and businesses can improve retention of valuable employees. It's a win-win-win . . . What has been a question is a women's protection at the jobsite to pump safely. If a mother chooses to breastfeed her baby, she deserves the legal protection to do so without having to worry about it impacting her career."[48]

58.     Numerous organizations outside of government also expressed strong support for the PUMP Act. For example, in a news release published on October 22, 2021, on the U.S. Breastfeeding Committee's website, Vania Leveille, Senior Legislative Counsel for the ACLU,

---

[46] https://adams.house.gov/media-center/press-releases/adams-maloney-congressional-maternity-care-caucus-black-maternal-0 (last accessed October 12, 2023).

[47] https://www.whitehouse.gov/wp-content/uploads/2021/09/H.R.-3110-SAP.pdf (last accessed October 12, 2023).

[48] https://www.newsweek.com/full-list-senators-who-voted-against-breastfeeding-workers-protections-1769450 (last accessed October 12, 2023).

said: "Employers in every industry should have policies in place to accommodate the needs of pregnant and breastfeeding employees but, unfortunately, that is not currently the case. Instead, too many workers are penalized, discriminated against, terminated, or left without options when they try to pump breast milk at work."[49]

59.     On the other hand, organizations that represent businesses also saw the value in passing the PUMP Act. The National Retail Federation's Senior Vice President for Government Relations told the Members of the House in a letter dated October 12, 2021, that "[t]he PUMP Act is a sound piece of bipartisan legislation that will allow nursing mothers to maintain their vital role the American workplace."[50]

60.     Similarly, in a letter sent to all the Members of Congress, Neil L. Bradley, Chief Policy Officer at the U.S. Chamber of Commerce, stated: "The PUMP Act is a win-win for nursing mothers and the businesses that employ them. Employers would get clarity and a way to avoid litigation, and nursing mothers would be able to remain in the workforce. The Chamber is pleased to strongly support this legislation."[51]

61.     Indeed, private industry also recognizes and supports the increasing need to protect and accommodate nursing mothers.  There is a growing industry for the sale of "portable lactation pods," which are specially designed private spaces available to be used in various public and

---

[49] https://www.usbreastfeeding.org/usbc-news--blogs/pump-for-nursing-mothers-act-passes-with-bipartisan-support-in-us-house-of-representatives (last accessed October 12, 2023).

[50] Letter from David French to the Honorable Nancy Pelosi (Oct. 12, 2021) *available at* http://d22f3d5c92fe72fd8ca1-d54e62f2f7fc3e2ff1881e7f0cef284e.r22.cf1.rackcdn.com/2021%20Hill%20Letters/NRF%20Support%20Letter%20-%20PUMP%20Act%20-%20October%2012%202021.pdf (last accessed October 12, 2023).

[51] *U.S. Chamber Letter on the PUMP Act* (Dec. 20, 2022) *available at* https://www.uschamber.com/employment-law/u-s-chamber-letter-on-the-pump-act (last accessed October 12, 2023).

private venues to support breastfeeding mothers.[52] These pods are intended to address the need for access to adequate space for breastfeeding, away from public spaces or unhygienic restrooms. The growing presence of these lactation pods in the United States highlights a societal effort to recognize the importance of the well-being of both new mothers and infants.

###### E.    The PUMP Act

62.     Given the acknowledged problems with the Pumping at Work Act, in late 2022, Congress passed the PUMP Act with strong bi-partisan majorities in both houses. In the House of Representatives, it passed with a 276-member majority,[53] and in the Senate, it passed with a near-unanimous vote of 92 to 5.[54]

63.     On December 29, 2022, the President signed an omnibus spending bill (P.L. 117-58), which included the PUMP Act.

64.     According to both the House bill (H.R. 3110)[55] and the relevant Senate Amendment (S. Amdt. 6595),[56] the purpose of the PUMP Act was "[t]o amend the [FLSA] to expand access to breastfeeding accommodations in the workplace, and for other purposes."

65.     Specifically, the PUMP Act amended the FLSA to include § 218d, which provides that:

> (a) An employer shall provide —

---

[52] For example, Mamava Inc., BrighterBooth, Nessel, and Panel Built Incorporated all market and sell portable, free-standing, and/or prefabricated lactation spaces.

[53] https://clerk.house.gov/Votes/2021331?BillNum=3110 (last accessed October 12, 2023).

[54] https://www.senate.gov/legislative/LIS/roll_call_votes/vote1172/vote_117_2_00417.htm (last accessed May 11, 2023).

[55] https://www.congress.gov/bill/117th-congress/house-bill/3110/text (last accessed October 12, 2023).

[56] https://www.congress.gov/amendment/117th-congress/senate-amendment/6595 (last accessed October 12, 2023).

‘‘(1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

‘‘(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 218d.

66.    Notably, the statute states that the "employer *shall* . . . provide a place…" for nursing parents to express milk. (Emphasis added.) The word "shall" in § 218d imposes an affirmative duty on the employer to provide a clean, secure space because, as Congress found, "[a] private space to express breast milk is critical for nursing employees."[57]

67.    Importantly, the PUMP Act also strengthened the relief available by inserting specific language in § 216(b) (one of the enforcement sections of the FLSA) stating that:

Any employer who violates the provisions of section 15(a)(3) *or 18D of this Act* [29 USCS § 215(a)(3) or 218d] *shall be liable for such legal or equitable relief as may be appropriate* to effectuate the purposes of section 15(a)(3) or 18D [29 USCS § 215(a)(3) *or 218d*], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added, which reflects the amendments to § 216(b)).

68.    Congress intended this addition to correct for the lack of enforcement provided for in the Pumping at Work Act. According to the legislative intent behind the PUMP Act, one of the purposes was to provide additional forms of relief:

…recovery only for unpaid minimum wages or overtime compensation renders employees unable to enforce current break time and space requirements in a private right of action…even if unpaid minimum wage or overtime compensation were recoverable, lost wages are often an inadequate or inappropriate form of relief… H.R. 3110 would allow workers to seek legal *and equitable relief*… Allowing for legal and equitable relief under H.R. 3110 will also

---

[57] H.R. 3110, 117th Cong. (1st Sess. 2021), at 10.

> *allow nursing employees to recover for harm to their physical and*
> *mental health…including for medical costs or emotional distress,*
> *and punitive damages for this type of harm*.[58]

### F.      Guidance from the Department of Labor

69.      On May 17, 2023, The U.S. Department of Labor Wage and Hour Division ("WHD") published Field Assistance Bulletin No. 2023-02 (the "FAB"), which provides guidance to agency officials responsible for enforcing the PUMP Act.[59] The FAB provides insight into how the WHD will enforce employees' rights under the PUMP Act.

70.      Regarding an employee's right to breaks to pump breast milk, the FAB emphasizes that employees are entitled to a "reasonable break *each time* such employee has need to pump breast milk at work for one year after the child's birth. An employer may not deny a covered employee a needed break to pump."[60]

71.      Regarding the space requirements, employers must provide a "functional space" that is "(1) shielded from view; (2) free from intrusion from coworkers and the public; (3) available each time it is needed by the employee; *and* (4) not a bathroom."[61]

72.      The FAB states: The location *must be functional as a space for pumping*.[62] It must have a place for the nursing employee to sit, a flat surface (other than the floor), and employees must be able to store milk while at work.[63]

---

[58] H.R. 3110, 117th Cong. (1st Sess. 2021), at 16 (emphasis added).

[59] U.S. Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2023-02. Available at: https://www.dol.gov/sites/dolgov/files/WHD/fab/2023-2.pdf (last accessed October 12, 2023).

[60] *Id.* at 2 (emphasis in original).

[61] *Id.* at 4 (emphasis in original).

[62] *Id.* (emphasis added).

[63] *Id.*

73.     Further, an employer who violates a nursing mother's right to reasonable break times and a functional space to pump breast milk is liable "for appropriate legal or equitable remedies . . . . [which] may include **compensatory damages and make-whole relief**, such as economic losses that resulted from violations, **and punitive damages** where appropriate. These remedies are available regardless of whether the employee has also experienced retaliation."[64]

74.     An employee may file a private cause of action seeking appropriate remedies, and there is "**no waiting time**" for an employee bringing a private suit "to enforce the reasonable break time requirement."[65]

75.     Finally, employers are required to "post and keep posted a notice explaining the FLSA [and PUMP Act provisions] in conspicuous places in every establishment where such employees are employed."[66]

76.     On September 18, 2023, the Department of Labor's Wage and Hour Division found "supervisors employed by Aimbridge Employee Service Corp. – operating as Hammock Beach Golf Resort and Spa – failed to provide a private place for a worker to express milk for her newborn baby, in violation of" the PUMP Act.[67] The agency found that it took supervisors nearly four months to provide an employee with a suitable space to pump milk, and even then the space — a manager's office — lacked privacy as the employee learned "when another worker entered the room while the mother was attempting to pump milk."

---

[64] *Id.* at 7 (emphasis added).

[65] *Id.* at 8 (emphasis in original).

[66] *Id.*

[67] *U.S. Department of Labor Finds Palm Coast Resort Operator Denied Employee Private Space to Express Milk for Newborn, As Federal Law Requires*. Available at: https://www.dol.gov/newsroom/releases/whd/whd20230918 (last accessed October 12, 2023).

77.     Division Director, Wildalí De Jesús, stated: Employers who fail to provide break time and a private place as the law requires are creating a barrier for women to balance their career and a child's needs once they return to work after having a child."[68] "There are long term benefits to breast feeding both for families and employers. Mothers who breast feed generally take less time off work due to childhood illnesses," added De Jesús.

78.     Plaintiff seeks this Court's assistance on behalf of all nursing mothers who work and their infant children to improve breastfeeding outcomes by clarifying that employers cannot deny their employees adequate lactation accommodation in the workplace.

## V.     DEFENDANT DENIES PLAINTIFF HER RIGHTS TO ACCOMMODATION

79.     Plaintiff Peguese began working for Otis in February 2023 as an Assembler at Otis at 1500 Otis Way in Florence, South Carolina.

80.     Ms. Peguese had her child in November 2022 and discussed her need for pumping accommodations with the hiring staff. When Ms. Peguese arrived on her first shift, Otis did not accommodate her to pump breast milk at work.

81.     On her first shift, when Ms. Peguese asked where she should pump, Ms. Peguese's supervisor told her that there was nowhere for her to pump and that she would have to use the bathroom or her car. Unprepared and needing to pump, Ms. Peguese got so engorged that she pumped in the restroom. The bathroom stalls do not have outlets, and Ms. Peguese had to manually squeeze the milk out of her breasts. From that point on, Ms. Peguese usually pumped in her car but would use the bathroom if she became too engorged. Ms. Peguese was concerned about her privacy pumping in her car, so she purchased a window visor for the front of her car. On at least one occasion, however, she was pumping in her car in the parking lot when someone walked by

---

[68] *Id.*

23

the side of the vehicle and could see her pumping. Also, some employees gave Ms. Peguese a hard time about pumping at work by making snide comments or giving her distasteful looks.

82.     There were empty offices in the building where Ms. Peguese worked, but when she asked about using the offices to pump, management told her that the offices were for the customer service representatives and "higher-ups."

83.     Ms. Peguese did not get breaks "as needed" to pump at work. She had two 10-minute paid breaks, but that was not enough time for her to pump. When her 10-minute break was over, she would stop pumping and go back to work. As a result, Ms. Peguese would regularly get engorged at work and would often leak milk through her shirt, and her coworkers would see. She had to dry her shirts in the bathroom, which was embarrassing.

84.     Ms. Peguese also used her 30-minute unpaid lunch break to pump each shift. Because she had to pump during her lunch, she regularly did not have a chance to get a rest or eat anything.

85.     Ms. Peguese ultimately left her job at Otis because of the lack of pumping accommodation in June 2023.

86.     Otis's lack of accommodation impacted Ms. Peguese physically and mentally. She regularly experienced severe engorgement at work, which caused her pain and anguish. She also experienced a significant reduction in her milk supply. Before working, Ms. Peguese was pumping roughly 10 ounces per side, but in June, after several months of work, Ms. Peguese noticed she was only producing four ounces per side, and shortly after that, it dropped to two ounces per side. Ms. Peguese felt humiliated and embarrassed when she leaked through her shirt and was disappointed that management refused to support her efforts to pump at work.

87.    Thus, Otis, acting through supervisors and managers, and on information and belief pursuant to organization-wide policies (or lack thereof), did not provide Ms. Peguese with sufficient break times "each time" she needed to pump. Nor did it provide her with a functional, sanitary, and private space to pump. Otis's acts violate the PUMP Act.

88.    In accordance with 29 C.F.R. § 516.4, Otis should have alerted nursing employees like Ms. Peguese of her rights to sufficient lactation accommodation by posting information in conspicuous locations at Otis locations across the country. Upon information and belief, Otis did not make such information available to ensure that employees were aware of their rights to take reasonable breaks and to have a secure place to pump.

89.    As Plaintiff's experience shows, in practice, Otis does not provide accommodations for nursing mothers. Otis failed to properly train its supervisors and management to accommodate requests from nursing employees for accommodation. Otis does not have an adequate or specific practice or a policy regarding secure, private, functional spaces for nursing mothers that is enforced at its locations across the country. Its failure to provide accommodations for nursing mothers is a violation of the law. The FLSA requires employers to provide reasonable accommodations for nursing mothers, such as break times and a private place to pump breast milk. Otis's refusal to do so denies nursing mothers their legal rights, makes it difficult for them to continue working while breastfeeding, and has impacted them mentally and physically.

90.    Otis's failure to provide Ms. Peguese and other similarly situated employees with reasonable breaks and a secure space, shielded from view, to express milk, caused her anxiety and uncertainty about her ability to continue breastfeeding. Returning to work after having a baby and continuing to pump during working hours requires mothers to have stamina and persistence. It requires upkeep of fluids and nutrition to ensure a continuous flow of milk production. Sufficient

time and a functional space are necessary because to begin the flow of milk, mothers must be in a relaxed and rested state, not stressed and anxious while pumping in the bathroom or in their personal vehicles in the public parking lots, in plain view. The stress and anxiety of breastfeeding while being seen by the public or colleagues, and fear of not having enough time to pump until empty, can jeopardize the flow of milk and may result in mothers not being able to express as quickly as someone who is relaxed and certain that they will not be intruded upon.[69]

91.     Ms. Peguese was damaged in that she experienced pain, anguish, discomfort, humiliation, embarrassment, emotional distress, and anxiety.

### VI.     COLLECTIVE ACTION ALLEGATIONS

92.     The "FLSA Collective" consists of all persons who have been or currently are employed by Otis across the country who (1) were or are lactating (e.g., individuals who express breast milk) from December 29, 2022, to the resolution of this action, (2) were or are non-executive employees of Otis, and (3) were or are not provided with a sanitary "functional space," upon request, that is (a) free from intrusion, (b) shielded from view, (c) available each time it is needed, and (d) not a bathroom; OR were denied a break to pump breast milk while at work in the year following the birth of the child.

93.     As of December 31, 2022, Otis had 300 facilities in the U.S. and employed roughly 10,000 employees.[70] There are roughly 1,300 women working at Otis in the U.S.[71] Upon

---

[69] *See* H.R. 3110, 117th Cong. (1st Sess. 2021), at 10 ("Breastfeeding mothers must feel safe in order to let down breast milk, and a reasonable guarantee of privacy is a key part of that safety. If a nursing mother feels unsafe or emotionally distressed, her production of oxytocin may be inhibited, which can create a physiological barrier to lactation." (citation omitted)).

[70] Employee data is from December 2021. *See* Otis, ESG Report, at 57. Available at: https://www.otisinvestors.com/2022esgreport (last accessed October 6, 2023).

[71] *Id.*

information and belief, there are numerous similarly situated employees who are working or worked for Otis and are or were unlawfully denied their rights under the PUMP Act.

94.     The number of affected employees can be ascertained by Otis based on its payroll and personnel records. Collective members may be informed of the pendency of this collective action by direct mail and/or publication at the various Otis locations throughout the country.

95.     This action is properly maintained as a collective action under 29 U.S.C. § 216(b) because all class members are similarly situated. The affected individuals were and continue to be female employees of Otis who: (1) required accommodations for lactation at work from December 29, 2022, to the present; (2) work or worked as non-executive employees for Otis that were subject to the same timekeeping and break policies; and (3) informed their supervisor or manager that they needed lactation accommodations at work.

96.     Otis facilities are generally sizeable with a significant number of offices, which it could have used to accommodate its nursing employees requiring a functional space that is shielded from view, free from intrusion, available when needed, and not a bathroom.

97.     As discussed above, companies such as Otis can accommodate nursing employees by purchasing portable spaces, additional examples of which are shown below. These portable lactation pods are available at a variety of different prices and sizes and can be stored off-site. They are marketed to provide a secure, sanitary space with a flat surface to comfortably accommodate all nursing mothers. This is a widely available and simple solution for Otis to accommodate its lactating employees.

 

98.     Otis could also have accommodated its nursing employees by providing them with access to clean offices or rooms and by installing locks on the doors to ensure they were secure. However, Otis chose not to do so.

99.     Furthermore, Otis failed to provide its nursing employees with breaks each time they needed to pump.  Otis's refusal to accommodate employees to allow them break time to pump is a clear violation of the PUMP Act and the rights of nursing mothers.

100.    Otis's willful policies and practices denied and continue to deny members of the FLSA Collective their rights under the PUMP Act. Otis's actions were willful because the PUMP Act received substantial publicity at the time of its passage and thereafter. The legal obligation to provide nursing employees with reasonable breaks and secure spaces has been in effect since 2010. Otis has career employment attorneys and an in-house legal team whose job requires staying up to date with recent laws and regulations and their potential impact on Otis's operations. Therefore, Otis knew or should have known about its obligation to provide lactation accommodations to its employees. Once Plaintiff informed her employers about the lack of accommodation, Otis had notice of its non-compliance and, by failing to act, willfully refused to provide sufficient accommodation.

101.    Otis claims that it "is committed to fostering an inclusive culture" that ensures "an equitable and inclusive work environment."[72] Otis boasts that it is on Forbes' list of the World's Top Female-Friendly Companies. However, refusing to provide lactation accommodations to nursing employees who repeatedly request it and forcing them to continue working while they pump falls far short of creating an inclusive culture for nursing mothers, and instead results in the unlawful denial of employees' rights under the PUMP Act.

### FIRST COUNT

**Violation of the FLSA and PUMP Act**
**[29 U.S.C. § 218d(a)(1)]**
**(Brought on Behalf of Plaintiff and the FLSA Collective)**

102.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

103.    Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

104.    The FLSA, at 29 U.S.C. § 218d(a)(1), states that an "employer shall provide: (1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk . . . ."

105.    In violation of the PUMP Act, Otis, throughout the relevant period, failed to provide reasonable break times for employees "to express breast milk for 1 year after the child's birth each time such employee needed to express milk. . . ." 29 U.S.C. § 218d(a)(2).

---

[72] *See* Otis, ESG Report, at 9. Available at: https://www.otisinvestors.com/2022esgreport (last accessed October 6, 2023).

106.    Otis, through supervisors and management employees, failed to provide reasonable break times for Plaintiff and similarly situated employees to express breast milk in violation of the FLSA.

107.    On information and belief, Otis, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide reasonable breaks to express breast milk to Plaintiff and those similarly situated in violation of the PUMP Act.

108.    Plaintiff will request that the Court authorize notice to all current and former employees of Otis who required a space to pump milk from December 29, 2022 to the date the notice is sent to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

109.    Otis violated Plaintiff's and the FLSA Collective's rights under the PUMP Act by failing to provide reasonable break times to express breast milk.

110.    Otis violated Plaintiff's and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

111.    Otis is liable to Plaintiff and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

## SECOND COUNT

### Violation of the FLSA and PUMP Act
### [29 U.S.C. § 218d(a)(2)]
### (Brought on Behalf of Plaintiff and the FLSA Collective)

112.    Each of the foregoing paragraphs is incorporated by reference as though fully set forth herein.

113.    Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

114.    The FLSA, at 29 U.S.C. § 218d(a)(2), states that an "employer shall provide: . . . (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

115.    In violation of the PUMP Act, Otis, throughout the relevant period, failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

116.    Despite requests from nursing employees, Otis, through supervisors and management employees, failed to provide a "functional," non-bathroom space within which Plaintiff and similarly situated employees could express breast milk without the worry of being intruded upon, in violation of the FLSA.

117.    On information and belief, Otis, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide sufficient lactation support to Plaintiff and those similarly situated, in violation of the PUMP Act.

118.    Plaintiff will request that the Court authorize notice to all current and former employees of Otis who required and requested a space to pump milk from December 29, 2022, to the date the notice is sent to inform them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

119.    Otis violated Plaintiff's and the FLSA Collective's rights under the PUMP Act by failing to provide an appropriate clean and safe place that is free from intrusion within which to pump breast milk.

120.    Otis violated Plaintiff's and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

121.    Otis is liable to Plaintiff and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and the FLSA Collective:

A.    An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.    An Order from this Court ordering Otis to post a copy of an agreed-upon and court-approved notice in a common space visible to employees at each Otis location across the country;

C.    An Order from this Court ordering Otis to provide the undersigned with the names, addresses, email addresses, and telephone numbers of all female employees who, from January 1, 2022, to the present, have taken leave from work under the Family Medical Leave Act;

D.    An Order from this Court ordering Otis to send, via email, a copy of the agreed-upon and court-approved notice to all female employees who, from January 1, 2022, to the present, have taken leave from work under the Family Medical Leave Act;

E.    Adjudicating and declaring that Otis's conduct as set forth herein and above is in violation of the FLSA;

F.    Adjudicating and declaring that Otis violated the FLSA by failing to provide reasonable break time and private, sanitary, non-bathroom lactation spaces for nursing mothers;

G.    Declaratory and injunctive relief as necessary and appropriate, including enjoining Otis from further violations of the FLSA;

H.    Awarding Plaintiff and the FLSA Collective legal and equitable damages in an amount consistent with the FLSA;

I.    Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Otis, in accordance with the FLSA;

J.     Awarding pre-and post-judgment interest and court costs as further allowed by law;

K.     Granting Plaintiff and the FLSA Collective leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

L.     Awarding any further legal or equitable relief the Court deems just, equitable, and/or appropriate.

**SIRI & GLIMSTAD LLP**

/s/ *Oren Faircloth*
Oren Faircloth (Bar No. ct30530)
Lisa R. Considine (*Pro Hac Vice* to be filed)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
E: ofaircloth@sirillp.com
E: lconsidine@sirillp.com

*Attorneys for Plaintiff and the FLSA Collective*

## CONSENT TO JOIN COLLECTIVE ACTION
## FAIR LABOR STANDARDS ACT OF 1938
### 29 U.S.C. § 216(b)

I hereby consent to be a party plaintiff in a lawsuit under the Fair Labor Standards Act concerning my employment with Otis Worldwide Corporation to recover all available relief under 29 U.S.C. § 216(b).

Markia Peguese
PRINTED NAME

*Markia Peguese*
Markia Peguese (Oct 16, 2023 15:07 EDT)
SIGNATURE

1005 Fortune St., Florence, SC 29506
ADDRESS

peguese_markia@yahoo.com
EMAIL ADDRESS